# SUNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

BRIAN VINK,

    *Plaintiff,*

Case No. 4:21-cv-12801

*v.*

District Judge Thomas L. Ludington
JORDAN BLOCK and     Magistrate Judge Patricia T. Morris
MARK BOOMERSHINE,

    *Defendants.*

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 21)

**I.   RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Jordan Block, P.A. and Mark Boomershine, P.A.'s July 22, 2022 motion to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF No. 21).

**II.   REPORT**

    **A.   Procedural and Factual Background**

On November 23, 2021, Plaintiff Brian Vinc, a now-paroled former Michigan Department of Corrections ("MDOC") prisoner, filed suit in this Court, alleging violations of his Eighth Amendment rights under 42 U.S.C. § 1983 while housed at the Charles Egeler Reception & Guidance Center ("RGC") in Jackson, Michigan

1

and later, at the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan.

Plaintiff makes the following factual allegations in his complaint. On November 14, 2018, during Plaintiff's time at RGC, P.A. Mark Boomershire him. (ECF No. 1, PageID.11, ¶ 10). Plaintiff directed Boomershire's attention to a number of "tumors" on his arms. (*Id*.) Plaintiff stated that his internet research and knowledge of his own body led him to believe that he had cancer. (*Id*.) Instead of taking Plaintiff's report seriously, Boomershire told him that cancer could not be diagnosed through the internet; told Plaintiff to "stay off the internet"; and asked Plaintiff if he had received a "mental health" evaluation. (*Id*.) In response to Plaintiff's statement that he needed to go to a hospital, Boomershine noted "with a hostile voice" that Plaintiff was able to "walk around." (*Id*.) Boomershine then palpated tumors on Plaintiff's torso, left chest, left neck, and left elbow. (*Id*. at PageID.12, ¶ 10). In response to Plaintiff's statement that he had cancer of the brain stem, Boomershine responded ("with a malicious smile") that Plaintiff did not have "neurologic" problems. (*Id*.) Boomershine declined to palpate additional tumors but ordered a chest x-ray. (*Id*. at PageID.13, ¶ 10).

On November 27, 2018, a non-defendant nurse refused Plaintiff's request for emergency treatment but instead, referred him for a mental health evaluation. (*Id*. at PageID.13, ¶ 11). On November 29, 2018 during a follow-up examination,

2

Boomershine stated that Plaintiff was "medically clear" and that "no cancer was spreading to [his] brain." (*Id*. at PageID.13, ¶ 12). Boomershine discounted Plaintiff's report of pain and pressure of the neck; problems breathing; and back pain from the tumors. (*Id*.) Boomershine asked Plaintiff if he had had a mental health evaluation, and then ended the appointment leaving Plaintiff in "intolerable pain," "fear," and "shock." (*Id*.) Over the next two weeks Plaintiff made multiple requests for medical treatment for back pain, dizziness, and nausea. (*Id*. at PageID.14, ¶ 13).

During Plaintiff's December 12, 2018 transfer to STF, Plaintiff experienced head pain followed by a "partial black out" and "small seizure." (*Id*. at PageID.14, ¶ 14). Despite Plaintiff exhibiting these symptoms on arrival at STF, non-defendant medical staff at STF told him that he "'did not qualify'" for treatment and would be seen in a few days. (*Id*. at PageID.14, ¶ 15. He was told to "'drink lots of water.'" (*Id*. at PageID.14, ¶ 16). He again requested efficacious treatment during a December 17, 2018 medical examination but was instead referred for mental health treatment. (*Id*. at PageID.14, ¶ 17). The same day, a non-defendant psychologist examined Plaintiff. (*Id*. at PageID.15, ¶ 18). In response to Plaintiff's request for treatment for his physical problems, the psychologist told him that he should sue the county jail where he had been housed prior to being in the custody of the MDOC. (*Id*.) Over the next four days, a non-defendant nurse told Plaintiff that Boomershine had documented that Plaintiff had a "thyroid nodule" and did not require further

3

treatment. (*Id*. at PageID.15, ¶ 19). Another nurse, in response to Plaintiff's report of "pain and suffering," told him to "drink water and [lie] down." (*Id*. at PageID.15, ¶ 20). Plaintiff was refused treatment by another caregiver, and he was told by another that the tumors were actually lipomas and did not require further care. (*Id*. at PageID.15, ¶¶ 21-22).

On January 2, 2019, Defendant Jordan Block, P.A. examined Plaintiff. (*Id*. at PageID.16, ¶ 23). Despite Plaintiff's claim of prior diagnostic testing, Block claimed that he was unaware of ultrasound images or biopsies performed by the county jail prior to Plaintiff's incarceration by the MDOC. (*Id*.) Block completed an order for a "skin biopsy" and proceeded to palpate tumors on Plaintiff's left arm, torso, neck, and chest. (*Id*.) In response to Plaintiff's report of brain and liver pain, seizures the previous month, and the need for immediate hospitalization, Block stated (in an "intimidating and hostile voice") that Plaintiff did not have "neurologic problems" and refused to palpate tumors on Plaintiff's back. (*Id*.) An x-ray taken on January 7, 2019 showed mild muscle strain. (*Id*. at PageID.17, ¶ 24). Blood work done the next day showed unremarkable results. (*Id*. at PageID.17, ¶ 25). On January 17, Block removed a small nodule from Plaintiff's left forearm but refused to "remove, treat, test, or feel" any of the other tumors. (*Id*. at PageID.17, ¶ 26). Block prescribed Tylenol and informed Plaintiff that if the biopsy showed normal results, he would not receive further treatment. (*Id*.) Over the next few weeks, Plaintiff

4

experienced pain and at times was unable to get out of bed, sleep, or eat. (*Id*. at PageID.18, ¶ 27). His multiple medical kites were ignored and various staff members made fun of his claims, including one instance where a corrections officer told him he was "mental" and an unknown nurse said "'HAHAHA That's Your Karma." (*Id*.) At a March 5, 2019 appointment, Block palpated one painful tumor but refused to examine the tumors on Plaintiff's back, telling Plaintiff that the tumors were only lipomas and were "nothing to worry about." (*Id*. at PageID.18, ¶ 28). On March 19 and April 8, non-defendant nurses examined Plaintiff but told him that he did not qualify for further treatment. (*Id*. at PageID.19-21, ¶¶ 29-30). Between March 2019 and July 2020, Plaintiff was examined by a number of non-defendant medical care providers who improperly discounted his claims that he had cancer, refused to examine him thoroughly, and denied him efficacious care. (*Id*. at PageID.19-21, ¶¶ 31-39).

Plaintiff alleges that he continues to experience, nausea, pain, and "emotional distress" as a result of his condition. (*Id*. at PageID.21, ¶ 40). He requests monetary damages.

**B.     Standard of Review**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual

matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable," however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiff filed his complaint *pro se*, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

**C. Analysis**

Plaintiff claims that Defendants Block and Boomershine were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. "The Eighth Amendment protects an inmate from "cruel and unusual punishments . . . which includes a right to be free from deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). "A deliberate-

6

indifference claim under the Eighth Amendment has an objective and a subjective component." *Id.* (internal citations omitted). "To meet the objective component, the plaintiff must show that the medical need is sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

"To meet the subjective component, the plaintiff must show that 'an official knew of and disregarded an excessive risk to inmate health or safety.'" *Brawner*, 14 F.4th at 591 (citing *Farmer* at 511 U.S. at 837). The subjective component requires a plaintiff to show that "'each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it.'" *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605–06 (6th Cir. 2022) (quoting *Griffith v. Franklin Cnty., Kentucky,* 975 F. 3d 554, 566 (6th Cir. 2020)). "This is a high standard of culpability, 'equivalent to criminal recklessness.'" *Id.* (quoting *Griffith*, 975 F.3d at 558). Even if a provider is negligent in his or her treatment, medical malpractice does not rise to the level of an Eighth Amendment violation. *Estelle v. Gamble,* 429 U.S. 97, 105-106 (1976) ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not

7

state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

The Sixth Circuit has also observed that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Moreover, a "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator*, 102 F. App'x. 907, 909 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 107).

As to the objective component, Plaintiff alleges that he has cancer, which would ordinarily qualify as a serious medical condition. However, his medical records, which he has appended to his complaint, do not indicate a diagnosis of any type of cancer. At his MDOC intake at RGC on November 14, 2018, he told P.A. Boomershine that he had "cancer of numerous sites," and according to his "internet search," he had "small and large cell lung cancer which has spread." (ECF No. 1, PageID.86). However, Boomershine noted that Plaintiff presented with "multiple

8

masses deep to the skin consistent with lipomas." (*Id*. at PageID.87). Nonetheless, based on Plaintiff's claim that he had cancer, Boomershine ordered x-rays of the chest and abdomen. (*Id*.) The x-rays revealed "no active pulmonary disease" and "constipation without evidence of an obstructive process," but no cancer. (*Id*. at PageID.91). Following a second provider visit on November 29, 2018, Boomershine scheduled a follow-up visit, noting, "Follow the patient's concern he has Pulmonary and Central Nervous System Cancer. We discover no evidence of such here in RG-C [Reception and Guidance Center]. We identified mildly elevated THS, Obesity and presumptive lipomas." (*Id*. at PageID.102). On December 21, 2018, he was again diagnosed with "multiple soft moveable Lypomas." (*Id*. at PageID.136).

On January 2, 2019, PA Jordan M. Block ordered x-rays of the neck and spine, and updated laboratory tests. Block noted that there was no previous diagnosis of cancer, and that Plaintiff's lesions were consistent with lipomas. (*Id*. at PageID.144, 146). Block also ordered a biopsy of the lipomas. (*Id*. at PageID.153). The x-rays and the lab results were unremarkable. (*Id*. at PageID.161). The biopsy revealed "a fragment of unremarkable fibroadipose tissue…[c]onsistent with a fragment of lipoma in the appropriate clinical context." (*Id*. at PageID.171). The biopsy did not reveal any cancer. On January 24, 2019, Block reviewed and updated Plaintiff's chart, writing, "Tissue bx [biopsy] received…Consistent with lipoma. No further

9

evaluation needed at this time." (*Id*. at PageID.177).[1] At a subsequent provider visit on March 5, 2019, Block again addressed Plaintiff's insistence that he had cancer, writing in his treatment notes, "Lipomas…Multiple soft tissue lesions consistent with lipomas. Previous skin lesion that patient reported as metastatic cancer was bx and returned as lipoma. Previous exams/labs/x-rays demonstrate no findings consistent with cancer." (*Id*. at PageID.208). As to Plaintiff's complaint of headaches, Block wrote, "Patient demonstrates no clinical neurologic findings consistent with self dx cancer. Unremarkable neurologic exam." (*Id*.)

Thus, while Plaintiff may subjectively believe that he suffers from terminal cancer, the very medical records that he has submitted with his complaint, including objective clinical tests, show definitively that he does not have cancer and has never been diagnosed as having cancer.[2] By failing to show a sufficiently serious medical

---

[1] Plaintiff was seen by a social worker on February 7, 2019. Referring to the biopsy that was negative for cancer, Plaintiff told her, "They're trying to cover it up. They're lying cause they don't want to look stupid." (*Id*. at PageID.184).

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Campbell v. National Mortg.*, 611 Fed. App'x 288, 292 (6th Cir. 2015) (quoting Fed.R.Civ.P. 10(c)). Therefore, the medical records that Plaintiff attached to his complaint are properly considered in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

need, Plaintiff has failed to meet the objective prong of a deliberate indifference claim.³

Nor has Plaintiff met the subjective prong. Again, Plaintiff's medical records show that he received appropriate medical attention from both Defendant Boomershine and Defendant Block, and that he merely disagrees with their conclusions. And given the lack of any objective clinical testing that would support a diagnosis of cancer, it is implausible to claim that either Defendant "subjectively perceived facts from which to infer substantial risk" to Plaintiff. *Griffith*, 975 F. 3d at 566.

At his intake at RCF, Boomershine examined Plaintiff, and in response to Plaintiff's insistence that he had cancer, ordered diagnostic tests, including x-rays and laboratory tests. Boomershine opined that the lesions were in fact lipomas, not cancer. When the tests showed no active or serious disease, Boomershine medically cleared Plaintiff for transfer, noting that he might benefit from a biopsy. (ECF No. 1, PageID.101-102). That Plaintiff disagreed with Boomershine's conclusions

---

³ Lipomas would not themselves constitute a "sufficiently serious" medical need. "A lipoma is a lump of fatty tissue that grows just under the skin. Lipomas move easily when you touch them and feel rubbery, not hard. Most lipomas aren't painful and don't cause health problems so they rarely need treatment." My Cleveland Clinic. *My.clevelandclinic.org/health/diseases/15008-lipomas*. (Last visited 10/06/2022).

11

(apparently based on internet research) does not support a claim of deliberate indifference. *Smith*, 102 F.App'x. at 909.

Following his transfer, Plaintiff was seen by Defendant Block, who ordered lab tests, x-rays, and a biopsy, all of which were consistent with lipomas, but negative for cancer. He took a medical history and did a complete physical examination, noting "multiple soft tissue lesions consistent with lipomas." (*Id*. at PageID.208). As to Plaintiff's complaint of headaches, Block offered medication, but Plaintiff declined, stating, "I have some." (*Id*. at PageID.208).

In short, based on the complaint and the exhibits that Plaintiff attached, he has not made a plausible showing that either Boomershine or Block were negligent, much less deliberately indifferent to his medical needs. His Eighth Amendment claims are premised wholly on his own unsupported belief, contrary to all clinical testing, that his lipomas are actually cancer, and on his corresponding disagreement with his medical providers.[4] This complaint should be dismissed under Rule 12(b)(6).

---

[4] In his response to the present motion, Plaintiff states that he has seen a number of doctors since being released from prison, none of whom have diagnosed cancer. Continuing to insist otherwise, he suggests that his various scans and results may have been "altered or deleted" and states "[t]hat Doctors are experts at covering stuff up and protecting each other." (ECF No. 23, PageID.585).

### D. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** Defendants Jordan Block, P.A. and Mark Boomershine, P.A.'s motion to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF No. 21).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 11, 2022                     s/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge